May it please the court and I will reserve three minutes for rebuttal if that is okay with you. Keep your eye on the clock we'll try to help it counts down. This case involves a claim for benefits due under ERISA section 502 a 1b which says that a participant can recover benefits due quote under the terms of the plan. Plaintiff United Air Ambulance transported a minor child despite the child's own treating physicians saying the transport was against medical advice. Indeed plaintiff in their briefing described the condition that the child presented with that day as a quote major source of mortality and the independent external reviewer who looked at the case described the condition as emergent and life-threatening. Reasonably and rationally the Cerner health plan does not cover services when they're so as I read the plan language it seems that it doesn't pay there's a double negative it doesn't pay for a service that is not recommended so that sounds like when you add the two negatives together it does pay for a service that is recommended it there's nothing that says a single doctor recommending against precludes a claim it just seems to require a recommendation and here there were recommendations to do this flight there were also recommendations not to but I have trouble seeing how this condition isn't satisfied. Well your honor I would I would disagree that this particular flight was recommended by any physician at all. The opinions on which United Air Ambulance relies are opinions from almost a month before the patient presented at the emergency room that day with what was an emergency situation and indeed those those opinions from those physicians described the child as stable and safe to travel at that time but you know his condition changed when he presented. He still had the condition that they thought needed a flight to Boston though correct? That those physicians from a month earlier yes that is correct your honor. So you have the additional emergency argument but I have trouble seeing how what what in the plan tells us that the had to happen that very day. I think that what if well first of all as you know on on ERISA benefits cases a plan gets deferent on their decision and that there's only an abuse of discretion if the if the evidence is not reasonable sorry I'm sorry it's only if it relies on a clearly erroneous finding of fact and the way that they read the medical evidence was that it's true that those physicians a month ago said that the underlying condition that the child should be transported and if United Air Ambulance or the participant had appealed that decision we would have a different case but then a month later the doesn't stay the same and on the day that the actual transport happened there was a life-threatening situation and that the treating physicians that day said this child should not travel today and yet he traveled so I think that's the the difference here is as I look at the doctors in Phoenix who said this need to go to Boston for that we can handle it here he was treated that day for the sepsis there was some improvement in the condition before he actually got on the airplane so I'm a little unsure that the recommendation of the doctors in Phoenix was it is too dangerous for him to fly rather than the sepsis which creates the sort of on-the-spot today emergency is something that we're perfectly capable of treating which I think was absolutely true they were perfectly capable of treating them that's correct I don't read what part of that is correct because if you agree that everything I said is correct that doesn't help you that that is correct your honor the part that I agree with is that Phoenix Children's Hospital was certainly capable of treating the emergent condition that are that arose that day and and that's the important point I don't read the medical records to say that he had been treated and then and basically been released for transfer I know I wasn't saying that but what I was saying I'm inclined to read the Phoenix doctors and saying we can treat this and therefore you don't need to go to Boston I know I'm not sure I read them as saying you are threatening your child's life if you take that child to Boston today well the the medical records are very clear that the transfer was against medical advice in fact the records well it's the questions what the put what precisely is the medical advice the medical advice was to be admitted and treated at Phoenix Children's Hospital and not to do the transport the the records talk about how there were discussions about we want to transfer him to Boston Children's Hospital and the doctor said you shouldn't do that the the stuff about how it was a life-threatening condition that comes from plaintiff's brief that he presented with a very serious condition that day and also the independent external reviewer who looked at those same medical records described the situation as emergent and life-threatening and so that's where those that language comes from immersion and life-threatening from what condition from short bowel syndrome or from sepsis I think it was from from the sepsis I think so too and if the and again if the if the patient had been admitted to Phoenix Children's Hospital treated for sepsis and then I'd improved and then the the child very likely and you know I'm no medical professional I don't know how long the days or several days may have been released and we have a different case but that's not what happened here I'm still troubled by the fact that I don't see anything in the plan that says you may not get reimbursed for something that is against medical advice I don't read the plan as saying that well your honor there are two two sections that issue services the first is the definition of covered services and this is the one that relates specifically to air ambulance transport and it says that the well there are two scenarios under which air ambulance transport are allowed the first is does not have the required services and or facilities to treat the participant and the interpretation of the medical evidence that the plan took was that the Phoenix Children's Hospital doctors were saying we have the facilities to treat this he needs to be treated here and we recommend that he be treated here and not travel medical advice point I mean that if all you're saying is we can treat him there's another side of that which is that they had also said Boston needs to treat him so I don't think that I don't think saying we can treat him is the same point you were trying to make as I understood it about against medical advice right well the the the covered services language says that the for the condition and the condition that the child was in the the total condition of the plaintiff that day both the underlying condition and the emergent condition did not require transport Phoenix Children's Hospital was capable and in fact the treating physicians recommended that he be treated there and the plan was following the medical advice of the patient's own treating physicians in interpreting that and then the second part of that is that the participant has an unstable condition that requires medical transport and rapid transport and again the treating physicians did not think that it required medical transport rapid transport they thought that he required to be admitted to Phoenix Children's Hospital that was the opinion of the treating physicians before your time runs too much assume that we don't have sepsis I understand that that's not that's counterfactual but it's so that what we have is short bowel syndrome Phoenix can't and cannot treat it Boston can treat it is your position that even though medical transport in that voice in that child's condition could really safely be done only by air ambulance so there's no contest that it can't be treated in Phoenix no contest but what Boston can and no contest that the only safe way to transporting is by air it's your position that nonetheless air ambulance is not covered under the plan your honor if there was no sepsis we have a different case I understand that and I'm asking you that question what's your answer to the different case yes my answer is that if there was that different case that claim would have been gone through the administrative process and we don't know how that would have come out it could have turned out exactly as you say that it was but that that question was never examined by the administrative process because we were dealing with a child who had the underlying condition yes but also had sepsis that day and his own training physician said he should not travel so your argument is not based upon the fact that it would not be covered if we didn't have the sense of substance you're saying that doesn't simply hasn't been decided that's correct there was a claim filed in those medical opinions in February but it was never pursued through appeal it was dropped and then it was about a month later he appears at the emergency room and then they take the transport that day and do a claim based on that that day's situation so I just want to make sure I understand this exchange you've just had in your brief you argued that one of the reasons this claim was properly denied was that there was no emergency presented by the short bowel syndrome it sounds like you're backing away from that and saying we don't know whether it would have been covered am I understanding that correctly you're not relying on the emergency point anymore well no your honor they certainly said that in in the decisions but what I'm saying is that that factual development was not gone through and was not fully examined because that wasn't the claim that was before them so we should not use the emergency basis the air transport requires an emergency in your argument in your brief you're not relying on that anymore as a basis to justify the denial well your honor when he presented at the emergency room on on that day there there's no doubt that it was an emergency situation I think the emergency situation is a red herring because that's not the reason they denied the claim when he showed up at the emergency room that was the original reason they denied the first claim was that the underlying condition was not an emergency but that was never perceived through appeal and wasn't developed by the administrative process yeah I have that claim about that because the September 13th denial only talks about services must be recommended by the medical provider it doesn't say anything about emergency I think it right right after you about that but it sounds like you're not trying to add the emergency reason at this point anyway no I mean when he shows up at the emergency room it's clearly an emergency I don't think anybody disputes that I also want to point out just the independent extra it's an emergency as to the sepsis not as to the short bowel syndrome it's an emergency situation on March 21st when the transport happened but the earlier claim the underlying situation they denied that saying it was not an emergency situation that claim was never appealed it never gets developed through the administrative process it's a non-issue as far as whether this claim for his condition on March 21st is covered well I know where it was threatening to take you over time but there's enough complexity here that don't worry about the time we'll make sure that you get to make your argument now and we'll have time for rebuttal so don't don't be too nervous about the time here my understanding is that there are two levels of application the first one is the pre-authorization review and because the pre-authorization review and then the appeals from that can doesn't necessarily finish before the event happens so pre-authorization is an odd thing but at the end of the pre-authorization appeals it looks as though this was approved although with the caveat that well wait a minute we may give you a different answer when it's a claim but am I mistaken that that when you get to the top level of pre-authorization review that it was approved I thought it was your honor pre-authorization is is is a unique process it's not yes I but that's not my question was it off there was it approved at the end of the pre-authorization appeal process not under the terms of the plan now but it was approved I mean you might say that doesn't count as guaranteeing payment but the pre-authorization process ended with something saying this is medical medically necessary yes it did say that it was medically necessary that's correct but it also said that it was subject to all terms and conditions of the plan and so it decided that one particular unique issue which is there anything better that can come from the pre-authorization process I think the pre-authorization process is more useful when it actually plays out pre-service so there's only one circumstance under which the plan requires pre-authorization and it's for elective inpatient procedures and I think transplant services or something and so in those circumstances you'll always get an answer before the service is actually provided or before the inpatient stay happens in which case it would be very you know and do those also have this language though with this doesn't guarantee payment that was in the pre-authorization language here I don't know what's in those letters I've never seen one of those letters the the only you know the the denial letter here is the only one I have I don't know I would think that it would be very hard if you pre-authorize the claim pre-service and then a participant acts on that advice and then you go back and deny the claim that's a very different case than what happened here where no one relied on this pre-authorization. I don't understand why there even was a process that was called pre-authorization that went past when the service was given can you explain that? There well the the plans typically author this pre-authorization services as sort of a service to their participants so they can get an idea of things are covered and it's unique that this pre-authorization request gets appealed and gets decided four months later that's very unique and very unusual I agree and I don't have an explanation for why that went on. At this point maybe we'll hear from the other side you sought to reserve three minutes we'll give you three minutes in rebuttal we'll make sure everybody gets a chance to say what they need to say. I appreciate it. Mr. Buntruck you got your you're muted. You're muted. Now better. Okay can you hear me okay? There we are. All right good afternoon your honors may I please the court and counsel my name is Shane Buntruck I'm here on behalf of United Air Ambulance who is here on behalf of KM who was at the time a two-year-old child at the time of this flight a benefit was provided by United Air Ambulance. I just want to and I appreciate the questions that that I've heard to the appellants case and I want to emphasize some of those I want to just start though if I may with it but I think three things here. Number one is just this overarching remedial nature of a risk of legislation that isn't new to this court of course but it's just a reminder of what the purpose of risk is and it's protect participants in this case it's protect KM and I don't think we can lose sight of that and the reason that that factors into the other overriding principle and I think why the district court found as it did and why I think the conclusion that Cerner definitely abused its discretion in denying this benefit was because all circumstances need to be considered here we do not consider ERISA does not require this plan doesn't require and Judge Friedland you pointed out you know where does it say in the plan that there's a time limit on a provider's recommendation for treatment there isn't where does it say in the plan that just because the mother who obviously this KM by the way was a premature infant and so unique circumstances here of course but the mother in conjunction with the medical providers in conjunction with United Air Ambulance determined that she needed this child needed to get to Boston okay and and she made that decision just because one doctor thought it wasn't a good idea at Phoenix Children's Hospital doesn't negate the ability to pay for benefits for the flight it's interesting about this Mr. Putbrook may I ask you a question hey is it your position that there was no safe way to move KM from Phoenix to Boston other than by air ambulance that is our position it is based on any evidence of that yeah the three recommendations dr. nutrition dr. Cary and the other physicians name escapes me but I have it here is dr. David find his name dr. Richard Benning who was a third-party administrator that sort of engaged back in February of 17 to determine whether this flight from Phoenix to Boston was medically necessary and this is in the record er 783 and 784 I believe it cited in a brief but it's excerpt of record volume 4 and I'll just quote from that doctor he says certified requested air transportation to Boston Children's Boston MA from Phoenix AZ as well as return trip medically necessary as a service as his child needs are not available elsewhere and definitely not near Phoenix he cannot be transferred by commercial air to the constant dressing changes needed and TPN for this nutrition and hydration why couldn't he be transported by commercial air because of the hourly change of dressings yeah because because the commercial commercial plane I'm sorry why can't that be done in a commercial plane I believe that both the three doctors all concluded wouldn't be possible to do it by commercial air transport because of the the frequent need of dressing changes needing of a sterile environment and and I'll get to that I can read the record from dr. nutrition at Boston and at Phoenix Children's both of them said it wasn't it wasn't medically appropriate for this two-year-old young man with this very serious and we would suggest untreated it's a life-threatening condition that he had to go by medical air ambulance transport if I'm understanding the record correctly the flight was at one point estimated to cost $40,000 but eventually $600,000 were requested for the reimbursement can you explain what changed my understanding of the record judge Friedland is that the at the time of the I believe through the what I've considered to be the pre authorization process and we would submit that really morphed into a claims process but I believe that Cerner independently I think it decided that this child needed the transport and then it done some checking with some other providers to determine what the cost was and that's what that number came that number never came from United Air Ambulance right what number never came from United Air I don't believe that ever I don't believe that United Air Ambulance ever submitted that because oftentimes providers you know they're they don't want cost to determine whether a service is needed or necessary provided by the plan right and United Air Ambulance is an out-of-network provider they're not an in-network provider to Cerner and so I believe the record is that whatever estimate of cost came from Cerner doing some independent checking unrelated to you know some of it doesn't quite make sense to me it may that may be true but I'm looking at what we have in the ER certain Tisha Clements of AHS rights to confirm or arrange air transport one-way price by an unnamed carrier for $39,385 that may or may not have been United Air Ambulance but if it's a United if it's a if it's an air ambulance service for which the price one-way price is quoted at $40,000 it strikes me as very odd that the price all of a sudden becomes 600,000 I mean they're just something that doesn't is not it's unexplained on I don't understand it and I appreciate that judge Fletcher I I would submit I would respond a couple ways first the issue isn't really about the price well I might be I think if you'd submitted a price if you submitted a reimbursement request to Cerner for $40,000 they probably would have paid it I mean it's a lot cheaper to pay $40,000 than to go through this litigation process that they're now going through I I don't disagree but but but I think if we follow that supposition through that to me demonstrates that there is an abuse of discretion here fundamentally and it's one of the things we argue is that as Judge Friedland pointed out this pre-authorization process to me even the defendants suggested it really was it's not that relevant we got to just look at the claim situation but what I find interesting in August of 2017 after Cerner has all the facts available to them all the records they know exactly what's going on as of March 21st and what I find interesting is that their senior claims person the person in the determination of benefits here says and I'll quote her she says on the day of the transfer we feel that the child would have met the criteria for a medical transfer given the fact that the child needed to be admitted to the hospital we will approve this denial which is kind of a double negative but they previously denied it and then they reversed themselves and then within so that's on August 8th with less than 30 days later the claim is submitted then Cerner directs his third party to negotiate with United Air Ambulance to pay the claim and there's a provider agreement issued to them and they accept it and then after that then they say oh no no no no timeout we're not gonna pay the claim because now we're construing our plan to say that well there's no medical provider that said that the child should fly on March 21st 2017 and that myopic view we believe demonstrates that this is a fundamental abuse of their discretion because they know full well there's three providers that have recommended this treatment in Boston and it you don't have to be a physician to determine that the only way he can receive that treatment and in the only place he can get it is Boston so he's got to get there somehow now granted I understand and we're not here to suggest that insurance coverage is unlimited but as the district court pointed out when you start playing these interpretations and you're interpreting a way to deny the claim now you are playing with people's lives and I don't mean to be overdramatic here and it's not my intent but but you know we come back to this you had three physicians and I agree you don't just sit there and wait well we have three that say yes fly and one that says don't I don't think that's the argument I mean defendant wants to sit there and say well we were reasonable we relied upon a doctor at the time of the flight but you cannot ignore that it's undisputed that this child could not be treated and I think some of the things you're saying I think we are not not in dispute but I want to come back to the $600,000 of the price paid it may be simple some way it may be irrelevant but nonetheless I'm puzzled by it are you prepared to represent to us that your client was not contacted ahead of time about what price they might they might pay I am confident to represent to the court only because I'll tell you why because there's nothing in the record with price until they get to them to get to the claim submitted the claim was submitted I believe on August 30th of 2017 and so the very first time there's any indication of price is August 30th when the claim was filed so I'm confident and I'm this clients I know this clients efforts because at times when we're dealing with you know whether to cover make coverage decisions right we also want to start with the fundamental back to the premise of a risk of the plan is there to protect the participant and so not not the cost can never be considered but generally speaking let's determine if the child needs that needs the care here undisputed let's determine the plan covers the care that's being recommended in this case it does and then we got it we've got to pay the price whatever that I've got another question that may not be directly relevant to the legal question in front of us but it's a question and that is if we were to hold with Cerner on this point who bears what cost I mean are the is the patient on the hook for $600,000 or are you a client going to eat it what's going to happen your honor what I can tell you is that and I agree it's not relevant for today but I'm to answer your question respect to the court I don't believe that my client is going to pursue would pursue even though they legally could would pursue this family for the unpaid claim so if if we have if you uphold the district courts decision which I believe this court should then then Cerner is going to pay the claim there's already a judgment in favor of United Air Ambulance against Cerner if the court does something other than that then then it or if ultimately decided that the claim was correctly denied then the United Air Ambulance has I guess advanced the benefit for the past four years for which it doesn't get compensated I mean I think we're getting a little far but but I understand your question and let me go back to if I can with respect have you tried to mediate this case we the parties did participate in the in the not the Court of Appeals kind of been called informal mediation process where there was there was some there was some effort to made there by the parties correct do you think you've exhausted that though if we sent you back would it be useful it may your honor I never want to foreclose obviously settlement because I think you know if you can resolve it it's always better for the parties I would certainly have to consult with my client but but I if that was a recommendation I think my clients would participate in 100% participate good faith yeah I mean that might be a good idea I can see weaknesses on both sides here if if I may and I don't fight in housekeeping if I reserve a couple of minutes of time I appreciate you judge Fletcher saying we'd have enough time I on the cross appeal which is the attorney's fees I don't need a lot of time there but I confess I'd forgotten about the cross appeal you wish you wish to speak to that now if if I well let me if I may I want to be so if I have one other point I'd like to make on the on the main appeal and then I would go to the cross appeal if that's okay no do you fire away please oh thank you I guess what I wanted what I wanted to emphasize in addition to what it set forth in the briefs about this plan and and the defendants in Cerner wants to say hey let's let's let the plan govern this and we agree and I think under the plan here under just a this flight it was a covered benefit of the plan because the criteria of emergency I guess it's a prerequisite there's understood there was an emergency right but there's three situations where there's an air ambulance flight provided by the plan one is it requires transport to a hospital we have that this this young man cam you transport to a hospital in this case we're submitting it was Boston Children's right secondly the second time the air ambulance is provided is that you transport from one hospital to another when the first hospital does not have the required services to treat the participant and I want to focus on that language we set that forth in our brief and that's the express lane but that's all the easy part the hard part is what's a medical emergency which is the premise for this was the sort bowel syndrome by itself a medical emergency well and I would submit to you with respect to Arisa the obligation was to set forth what is the emergency they never defined it all throughout the process four and a half months work they never defined emergency and they never give the opportunity for KM to provide the additional evidence for what is emergency right when what what's interesting is that he doesn't even seem to be relying on emergency anymore today so yeah yeah you may have dropped out I mean that's that they've evolved to well you know it was you know on the plain side oh no no wait a minute wait a minute no provider recommended recommend the flight on the day that it happened and again there is nothing the plan that says that it has to be that there's some temporal limit to a provider's recommendation I mean common sense says to organize and coordinate with receiving hospital the setting hospital if that was the case and the provider takes some time it and under that to sit to argue well no provider recommended on that day well that's true they didn't recommend on that day but there was three and all all the evidence is just this young man needed this treatment and no no we got all that no I want to talk about the cross-appeal now yeah I'll just briefly address that if I would yeah please and then I'll move on with respect to the cross-appeal of course the district court applied the Hummel factors decided they were essentially even and then said well we're gonna deny the fees to UAA because and we submit that the special circumstances weren't weren't identified by the district court in denying the award of fees because the general rule is that a prevailing party and a risk of claim is entitled to their fees and unless there's absent special circumstances that would make awarding those fees unjust and there's no such finding the district court about that special circumstance and and for those reasons we think the district court erred in not awarding those fees okay good let's let's let's hear from the other side let's put three minutes on the clock for you thank you your honor just asked for answering your question about the the pricing it does absolutely make a difference and here's why the reason they were able to charge six dollars is because they submitted this under the medical emergency situation where the providers don't need to be in network and there's no opportunity to negotiate that price it Cerner got quotes for that transport when they looked into it when the first medical opinions came in and was $40,000 right then the patient presents with a medical emergency the doctors say this child should not travel you should not take this child by air ambulance today he's not stable no wait a minute wait and they do excuse me there's something funny going on I don't understand the air ambulance was arranged before the sepsis emergency shows up the sepsis emergency threatens to interrupt with the flight that's already scheduled isn't that right no no your honor there was no they submitted a claim and it had been denied but it hadn't gone through the administrative process and perhaps had set up the flight at least wasn't that the whole point that the mother had an understanding that if they didn't take the flight that day they couldn't reschedule it for a long time or something because it had been set up for that day in advance no I don't think that's the I don't think those were the facts they transported so you're saying that they called up air ambulance that morning that that's correct your honor that can't be that's entirely inconsistent with what I read in the record where she says listen up I'm worried that I can't reschedule this no what I think she says is they the the February opinion the the Cerner plan comes out and says we don't pay unless this is a medical emergency for air ambulance transport then the patient shows up at the emergency room and they say well here's an emergency let's transport this child and the doctor says no you can't transport this child today because they have sepsis they're not stable to travel and they travel anyone that doesn't make any sense to me and I well we're in the where in the record is this narrative that you're giving me that's that's what I took from those medical records there's no evidence that there was a transport already set up I don't I've never heard that before well if there was none already set up it doesn't make any sense that the mother is saying I'm worried that is that I can't do this for a long time doesn't gonna have to reschedule she's worried that the situation will stabilize and then it won't be an emergency anymore and she won't be able to take the flight mr. Leopold let me ask you a question mr. Buntrock talked about three medical doctors who said that was an emergency that the child be transported to Boston in the ambulance it's medically appropriate at that time doesn't that constitute a medical emergency no your honor in fact what they said was that they said that the treatment was not available at Phoenix Children's Hospital and that he needed to be transported to Boston and that the best way to do that was via air ambulance that is all correct but they did not say that it was a medical emergency no where in there today are relying on the portion of the plan that provides for air ambulance only for a miracle medical emergency that's correct your honor in other words judge Friedland had it wrong that you know so there are two claims here there was a claim based on those three medical opinions early in February right and those three doctors say they need to transfer to go to Boston they filed that claim that claim gets denied and then it gets dropped there is no appeal of that claim then the child shows up at Phoenix Children's Hospital in the emergency room and the decision is made that day to transport him to Boston because they say aha here's an emergency I'm looking at er 9-11 and it says that at least it was scheduled the day before and it was before he woke up the next day feeling sick which was the sepsis as at least on er 9-11 it looks like that all right a way we're in that number three scheduled the day prior corrected your honor I was not aware of that that fact yeah well that changes that totally changes the narrative then so she's not claiming hey I got an emergency and therefore today I want out of here it was scheduled before the substance emergency arose that's correct now it was not going to be paid for by the plan because that claim had been denied well it was it was being appealed but you didn't have I mean today I don't think we can go back on the whole 15 minutes we spent earlier I had a whole list of questions for you about what the emergency was and you said you're not relying on that so I don't I mean it's up to judge Fletcher but if you are relying on emergency I have a whole list of questions for you and I think you said you're not well there's no doubt that I guess that the important point is is that there are two separate claims here your honors there is the claim in February for the underlying condition in which all those opinions were premised on he was stable and safe to travel right and that ends up in the pre-authorization if I go I'll use your terminology when it turns out as a post-event authorization that ends up after the appeal approving it no no it's 2017 no no your honor that that's not correct because what happens is that then he shows up with an emergency right and United Air Ambulance submits the pre-authorization request the emergency pre-authorization request that day for no well I'm talking about something else I'm talking about the the pre-authorization request that begins February 20th and then we finally get in a resolution of the appeal on August 8 2017 that's what I'm talking about right that is a different request that is not the request that was decided well that request was the resolution of that give you a different answer when you make a claim correct but I understand what was authorized then was we approve this as a quote pre-authorization even though it's a post authorization we approve the pre-authorization of the payment for air transport for this patient even though at this point they're not talking about sepsis that's how I understand what the decision was on August August 8 2017 in the pre-authorization posture what am I misunderstanding well I I think that the the important point is the pre-authorization request did not decide the claim no I understand that but is there anything but I just said that's wrong well there are two claims and I maybe we're just talking past each other here and I apologize but you know there's the February the one that starts in February right and then there's a new request pre-authorization request that is submitted the day that he shows up at the emergency room the the emergency room one is the one that is that goes through the the pre-authorization process is decided I thought your only argument was that there was a doctor recommendation against it I think that is correct because that bowels and this vowel short short vowel is not an emergency that's not part of your argument as to the claim that we're talking about at this point right that that's correct because that claim the second claim stems from him being at the emergency room no one denies that that's an emergency the claim regarding the short bowel syndrome just gets dropped it never gets it doesn't go anywhere and it doesn't go through the I don't know and the only thing I can say to that is that if that first claim had gone through the administrative process there may have been information brought forth about other ways to transport him but it never went through the administrative process we don't know what the answer to that is doctors recommended the use of air ambulance in February right that's correct those doctors in February recommend the burden is on Cerner now to say to say the child could have been transported by other than an air ambulance that's correct but again we're talking about two separate claims because the the the claim from February doesn't get appealed like that's not before this court if they didn't exhaust administrative remedies it was never decided it was never examined the the appeal that gets the request that gets appealed is the day when he shows up in the emergency room with sepsis and they transport him against medical advice and on that day sorry we're way over time so I just like to ask you if you think there would be any point of trying mediation again in this case I would never be opposed to mediation I would strongly recommend it because I think you're both gonna lose I'll pass that on to my client for sure okay at this point I'm not sure there's any point in further questions any further question from the bench no okay thank you thank you very much United Air Ambulance versus Cerner Corporation and the Health Exchange submitted for decision thank thank both of you thank you
judges: W. Fletcher, Bea, Friedland